UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JIMMY L. TOUNGATE, JR. and MEIGHAN HAGERTY, and the marital community comprised thereof,<br><br>Plaintiffs,<br><br>v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS, USA, INC., a New York corporation doing business in Washington State,<br><br>Defendant. | NO. C08-0423RL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT |

## I. INTRODUCTION

This matter comes before the Court on "Defendant's Motion for Summary Judgment," Dkt. #20, and "Plaintiffs' Motion for Leave to File their First Amended Complaint for Damages," Dkt. #29. Plaintiff Jimmy Toungate was employed by defendant Konica Minolta as a Customer Imaging Technician. After a seizure disorder diagnosis precluded Mr. Toungate from driving to customer locations, defendant terminated his employment. Plaintiffs filed suit claiming that defendant failed to accommodate Mr. Toungate's disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq.* Defendant filed its motion for

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 1

summary judgment on November 20, 2008. Dkt. #20. After defendant's motion was fully briefed, plaintiffs filed a motion to amend their complaint to include a claim for violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, Dkt. #29. For the reasons set forth below, the Court grants defendant's motion for summary judgment with regard to the ADA and WLAD claims[1] and grants plaintiffs' motion to amend their complaint.

## II. DISCUSSION

**A. Background**

Defendant hired Mr. Toungate as a Customer Imaging Technician in its Seattle office on February 13, 2006. While the position initially required Mr. Toungate to service and maintain digital copiers on site, Dkt. #22, Ex. A at 72, after the first two months he primarily repaired and serviced copiers at customer locations, id. at 83. Mr. Toungate drove throughout the greater Seattle area, id. at 75-79, and he also traveled several times a week to further locations to assist other technicians with customer demands, id. at 80.

On or about February 1, 2007, Dr. Mary Reif diagnosed Mr. Toungate with partial complex seizure disorder, a form of epilepsy. Id. at 93; Dkt. #22, Ex. B at 8. Dr. Reif prohibited Mr. Toungate from driving until such time as his seizures had been controlled for six months. Dkt. #22, Ex. A at 95-96. Dr. Reif initially prescribed Dilantin to Mr. Toungate, id. at 98, but his seizures only worsened, id.

On February 2, 2007, Mr. Toungate telephoned his manager, Dennis Chambers, telling him that he needed to take one to two weeks off due to his medical condition. Id. at 94, 97. After Steve Board, the Seattle office Branch Technical Manager, informed Mr. Toungate that he could take up to four weeks of unpaid personal leave, id. at 101, he chose to take the full four

---

[1] Because the Court finds that this matter can be decided on the parties' memoranda, declarations, and exhibits, defendant's request for oral argument is denied.

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 2

weeks permitted, id. On February 16, 2007, Michelle Kelly, a Benefits and Disability Specialist in defendant's Human Resources department, wrote a letter to Mr. Toungate confirming that he had been placed on personal leave of absence effective February 5, 2007 for a total of four weeks. Dkt. #22, Ex. D. at 1. The letter informed Mr. Toungate that he would "not be allowed to return to work until the release form from your physician is provided to your superior or received in the Disability Department prior to your return." Id. at 2. Ms. Kelly further noted that Mr. Toungate was "not eligible for concurrent leave pursuant to the [FMLA] because you have not been employed by Konica Minolta for one year." Id. at 1 (emphasis in original). Finally, the letter informed Mr. Toungate that he may apply for an extension of his personal leave of sixty days or longer upon special request. Id. at 3. Upon hearing from Mr. Toungate on February 26, 2007 that he did not believe he would be released to return to work by the end of his four week leave period, see Dkt. #22, Ex. A at 185, Ms. Kelly sent him the forms he needed to request a leave extension, id.

On March 1, 2007, Dr. Reif completed the Physician's Statement regarding Mr. Toungate. Dkt. #22, Ex. E at 3. In the space provided for the "date patient will be able to return to work," Dr. Reif wrote "unknown – unable to drive x6 mo or whenever seizures are controlled (6 mo after control achieved)." Id. One day later, Mr. Toungate wrote a letter addressed to Mr. Board stating that "[a]t the advice of my neurologist, I am unable at this time to drive to make service calls," and requesting that "reasonable accommodations be made to hasten my return to work." Dkt. #22, Ex. A at 188. Mr. Toungate also requested an additional sixty days of leave. Dkt. #24, Ex. 10. On March 15, 2007, Ms. Kelly e-mailed a letter to Mr. Toungate denying his request for an extension of personal leave and terminating his employment. Dkt. #22, Ex. F. The letter cited Mr. Toungate's "inability to perform the necessary functions of [his] position for an undetermined period of time" and provided that he may apply for any open position when he

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 3

1 is medically released to return to work. Id.

**B. Analysis**

    **1. Motion for Summary Judgment**

Defendant contends that plaintiffs cannot establish a claim for failure to accommodate under the ADA or WLAD. Dkt. #20 at 11. Fed. R. Civ. P. 56(c) instructs that summary judgment should be rendered only if "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law."

The parties agree that to sustain a failure to accommodate claim under the ADA,[2] plaintiffs must present prima facie evidence that (1) Mr. Toungate had a disability as defined by the ADA; (2) he was qualified to perform the essential functions of his job; (3) he gave his employer notice of his disability and limitations; and (4) upon notice, the employer failed to adopt measures available to it in order to accommodate the disability. Hylinger v. Union Pac. R.R., 538 F.Supp. 2d 1325, 1330-31 (W.D. Wash. 2008) (citing Barnett v. U.S. Air Inc., 228 F.3d 1105, 1114 (9th Cir. 2000), vacated in part on other grounds, 535 U.S. 391 (2002). Because plaintiffs are unable to establish the first element of a failure to accommodate claim, summary judgment in favor of defendant on the ADA and WLAD claims is appropriate.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such impairment; or ©) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). To qualify as "disabled" under the first subsection of the ADA, plaintiffs must establish three elements. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, a plaintiff's condition must constitute a mental or physical "impairment." Second, the impairment must impact a "major life activity."

---

[2] The parties also agree that the elements of a failure to accommodate claim under the WLAD are substantially similar to those under the ADA. See Dkt. #20 at 12; Dkt. #23 at 13 n.60.

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 4

Third, the impairment must "substantially limit" the major life activity identified.

Defendant does not dispute that Mr. Toungate's seizure disorder is an impairment. But "[m]erely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). Federal regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). Although this list is not exhaustive, Bragdon, 524 U.S. at 639, it is illustrative of the kinds of activities within the contemplation of the ADA.

Plaintiffs contend that Mr. Toungate's seizure disorder limits his ability to drive. However, driving is not a major life activity. Although the Ninth Circuit has yet to decide the issue, the case law from other circuits is informative. In Kellogg v. Energy Safety Servs. Inc., 544 F.3d 1121 (10th Cir. 2008), for example, the Tenth Circuit held that "driving is not itself a major life activity," id. at 1126, noting that it is "literally[] a means to an end" while the activities enumerated by federal regulation "are all profoundly more important in and of themselves than is driving," id. at 1125. Similarly, in Chenoweth v. Hillsborough County, 250 F.3d 1328 (11th Cir. 2001), the Eleventh Circuit noted that "driving is not only absent from the list but is conspicuously different in character from the activities that are listed. It would at the least be an oddity that a major life activity should require a license from the state, revocable for a variety of reasons including failure to insure," id. at 1329. The Eleventh Circuit further observed that "millions of Americans do not drive, millions are passengers to work, and deprivation of being self-driven to work cannot be sensibly compared to inability to see or to

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 5

learn," id. at 1329-30.³

Plaintiffs cite three reasons why the Court should find that driving is a major life activity. Dkt. #23 at 16. First, plaintiffs state that "the Ninth Circuit interprets the term 'major life activity' broadly and has held driving *can be* a major life activity." Id. Were this true, the Court's analysis would be foreclosed, for this Court is bound by Ninth Circuit precedent. However, plaintiffs erroneously cite Norris v. Allied-Sysco Food Services, Inc., 948 F.Supp. 1418 (N.D. Cal. 1996), as a Ninth Circuit case, Dkt. #23 at 14. In Norris, the district court stated in a footnote that the jury "could have concluded that Norris's back injury substantially limited her ability to drive, and the jury could have reasonably felt that, at least in California, driving is a major life activity." 948 F.Supp. at 1433 n.13. Whether driving is a "major life activity" under the ADA, however, is a question of law for the Court. See Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1129 (10th Cir. 2003). The Court, therefore, finds Norris unpersuasive.

Second, plaintiffs state that "other jurisdictions have interpreted driving to be a major life activity." Dkt. #23 at 16. While some courts have said as much, plaintiffs overstate the supporting case law. Plaintiffs mistakenly cite Arnold v. County of Cook, 220 F.Supp. 2d 893 (N.D. Ill. 2002), as a Seventh Circuit case, Dkt. #23 at 14. Moreover, while Arnold suggests in a footnote that "there are compelling reasons to think that driving should qualify as a major life

---

³ See also Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998) (driving "cannot reasonably be deemed major league" to qualify as major life activity); Robinson v. Lockheed Martin Corp., 212 Fed. Appx. 121, 124 (3d Cir. 2007); Livingston v. Fred Meyer Stores, Inc., 567 F.Supp. 2d 1265, 1271 (D. Or. 2008) ("reject[ing] the proposition that 'driving' by itself qualifies as a major life activity"); Kim v. Potter, 460 F.Supp. 2d 1194, 1200 (D. Haw. 2006); Acevedo Lopez v. Police Dep't of the Commonwealth of Puerto Rico, 81 F.Supp. 2d 293, 297 (D.P.R. 1999) ("The significance of driving is simply not on par with those basic, essential human functions that are within the contemplation of the ADA.").

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 6

activity," 220 F.Supp. 2d at 895 n.3, it does not hold as much. Plaintiffs similarly elevate the district court case of United States v. City & County of Denver, 49 F.Supp. 2d 1233 (D. Colo. 1999), to appellate status, Dkt. #23 at 14. This case merely lists driving as one of several major life activities without any analysis that might persuade the Court. 49 F.Supp. 2d at 1253. Plaintiffs also cite Anderson v. North Dakota State Hosp., 232 F.3d 634 (8th Cir. 2000), as "holding" driving to be a major life activity, Dkt. #23 at 14, when in fact the Eighth Circuit only "assume[d]" it was for purposes of its analysis, 232 F.3d at 636. Most glaringly, plaintiffs go so far as to assert that "the Supreme Court found driving to be 'of central importance to most people's daily lives,'" Dkt. #23 at 16, citing Toyota Motor Mfg., 534 U.S. 184. But the Supreme Court held no such thing. It merely defined "major life activities" as "tasks that are of central importance to most people's daily lives," 534 U.S. at 198, and held that the plaintiff did not provide sufficient proof that her carpal tunnel syndrome qualified her as disabled under the ADA, id. at 202. Plaintiffs' misrepresentation of the governing case law unnecessarily confuses the issue and does nothing to advance their cause.[4]

Third, plaintiffs contend that "Congress clearly intends the term 'disability' to be constructed broadly," Dkt. #23 at 16, referring to the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, in which Congress emphasized "the broad scope of protection intended to be afforded by the ADA," id. § 2(a)(5). But whatever the effect of the ADA amendments on the definition of "major life activity," it is irrelevant to the present case. Those amendments became effective on January 1, 2009, id. § 8, while the underlying facts of this case occurred well before that date. Therefore, the ADA amendments of 2008 do not apply to

---

[4] Plaintiffs' counsel's repeated failure to accurately cite the case law, artificially promoting favorable cases to precedential level and falsely asserting that courts have "held" in her clients' favor, does her clients a disservice. Improper citation only renders counsel's arguments less reliable in the eyes of the Court. Whether the frequent errors are a result of inadvertence or bad faith, they are inexcusable.

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 7

1  plaintiffs' action.

2         Unlike the activities enumerated by federal regulation, driving is a privilege granted by each state's licensing authority, not a basic or essential function of daily living. Many people do not drive, either by choice or circumstance, and while an inability to drive may be a significant inconvenience depending on where one lives,[5] it does not render one disabled for purposes of the ADA. Although it would not be "entirely farfetched to promote driving to a major life activity," Chenoweth, 250 F.3d at 1329, the Court is unpersuaded to do so today without further guidance from the Ninth Circuit or the Supreme Court.

       Plaintiffs further argue that even if driving is not a "major life activity" under the ADA, Mr. Toungate's condition had worsened due to medication such that he was limited in other life activities as well. Dkt. #23 at 16. According to plaintiffs, the "Dilantin seizures" Mr. Toungate suffered "affected his ability to speak, to walk, to stand, to negotiate stairs, to cook, to wash dishes, to bathe, and to do other household chores such as taking out the garbage." Id. at 17. This argument runs contrary both to plaintiffs' original submission that Mr. Toungate's "cognitive abilities are not impaired by his epilepsy, nor are his motor skills," Am. Compl., Dkt. #14, ¶3.9, and to plaintiffs' statement just two pages later in their response brief that "Mr. Toungate had simply been restricted from driving," Dkt. #23 at 19; see also Def.'s First Interrogs. and Req. for Produc. to Pls., Resp. to Interrog. No. 2, Dkt. #22, Ex. G. However, even assuming that Mr. Toungate was totally disabled as a result of his "Dilantin seizures," he then could not establish the second element of a failure to accommodate claim, for he would be

---

[5] See Colwell, 158 F.3d at 642 ("In deciding whether a particular activity is a 'major life activity,' we ask whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff.").

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 8

unable to perform the essential functions of his job or most any job.[6] In either event, plaintiffs' claim fails as a matter of law.

### 2. Motion for Leave to Amend Complaint

On January 7, 2009, while defendant's summary judgment motion was pending before the Court, plaintiffs filed a motion for leave to amend their complaint to include a claim for violation of the FMLA. Dkt. #29. The Court's case schedule establishes January 7, 2009 as the deadline for the amendment of all pleadings. Dkt. #19 at 1. Defendant argues that the deadline refers to actual amendments, not motions to amend, and therefore plaintiffs' motion to amend is untimely filed under Fed. R. Civ. P. 16(b). Dkt. #34 at 5. The case schedule sets deadlines for party submissions. The actual amendment of a complaint, however, occurs only by Court order upon consideration of a motion to amend. The Court rejects defendant's interpretation, which imposes a January 7, 2009 deadline on the Court instead of the parties. Therefore, the Court finds that plaintiffs filed their motion to amend within the time frame required by the case schedule.

But the Court need not accept all timely-filed motions to amend. See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 952 (9th Cir. 2006). The Court evaluates five factors in determining whether to grant a motion to amend under Fed. R. Civ. P. 15(a): (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the plaintiffs have previously amended their complaint. Johnson v. Buckley, 356 F.3d

---

[6] "An employee is 'unable to perform the functions of the position' where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the [ADA.]" Rowe v. Laidlaw Transit, Inc., 244 F.3d 1115, 1118 (9th Cir. 2001). During her deposition, Dr. Reif testified that Mr. Toungate was "having enough spells that if someone had asked me, 'Can he do anything,' I might have said, 'Well, he can't do anything until I see his seizures under control.' But I was doing this from the perspective of what he did for a living." Dkt. #22, Ex. B at 37.

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 9

1067, 1077 (9th Cir. 2004). "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, the liberal amendment standard afforded by Rule 15 is plaintiffs' saving grace.

Defendant does not allege bad faith, but it does contend that plaintiffs unduly delayed filing their motion to amend. Plaintiffs maintain that they "gained the necessary facts to support a FMLA claim on November 5, 2008," Dkt. #37 at 5 n.10, whereupon they learned that "Mr. Tougate [sic] was not eligible for leave under the [FMLA] because he did not reach his one-year anniversary date," Dkt. #30 ¶6. But this was hardly news. In Ms. Kelly's February 16, 2007 letter to Mr. Toungate, she specifically informed him: "You are not eligible for concurrent leave pursuant to the [FMLA] because you have not been employed at Konica Minolta for one year." Dkt. #22, Ex. D at 1 (emphasis in original). At the very least, plaintiffs learned the necessary facts in June 2008, more than six months before they filed the motion to amend, when they received documents detailing defendant's leave policy. See Dkt. #30 ¶5. Although the manner in which plaintiffs have chosen to pursue their case is inefficient and somewhat befuddling, the Court cannot say that the delay is undue since they have met the Court-imposed deadline.

Defendant also contends that plaintiffs' proposed amendment is futile because Mr. Toungate is ineligible under the FMLA. Dkt. #34 at 8. Defendant cites the applicable federal regulation, which states that the determination of whether an employee has been employed for at least twelve months such that he is eligible for FMLA leave "must be made as of the date leave commences." 29 C.F.R. § 825.100(d). Plaintiffs reply that under defendant's own policies, Mr. Toungate was still "employed" one year after he was hired. Dkt. #37 at 5. Given the Court's obligation to read all inferences in favor of granting the motion to amend, Griggs v. Pace American Group, Inc., 170 F.3d 877, 880 (9th Cir. 1999), the Court will not deny the motion on futility grounds.

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 10

Finally, defendant contends that it will be prejudiced by the proposed amendment.[7] Dkt. #34 at 11. While it is true that defendant filed its motion for summary judgment based on plaintiffs' previous complaint, defendant ran the risk that plaintiffs might add claims by filing its summary judgment motion before the deadline for amending pleadings. Also, because the discovery deadline has still not passed, defendant's need to investigate the new claim does not justify a denial of plaintiffs' motion to amend. However, the Court recognizes the inconvenience of having to engage in further discovery after having deposed all of the witnesses in reliance upon a finite set of claims. The Court, therefore, *sua sponte* grants defendant leave to take second depositions of all relevant witnesses. Defendant may also choose to file a request for reasonable costs associated with those depositions.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment with regard to the ADA and WLAD claims (Dkt. #20). The Court also GRANTS plaintiffs' motion for leave to amend their complaint (Dkt. #29).

DATED this 9th day of March, 2009.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

---

[7] Although defendant did not specifically argue the point, the fact that plaintiffs have previously amended their complaint weighs against granting their motion to amend. Plaintiffs have mistakenly titled their proposed amendment as the "First Amended Complaint," when in fact it should be identified as the "Second Amended Complaint." See Dkt. #5, Ex. A at 6 ("Complaint for Damages"); Dkt. #14 ("Amended Complaint for Damages").

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINT - 11